RUFUS F. PIERCE *vs.* INHABITANTS OF GREENFIELD.

Penobscot.     Opinion April 11, 1902.

*Towns.   Debts.   Town Orders.   Ratification.   Evidence.*

1.  An action will not lie against a town for money loaned its officers upon
    the credit of the town, but without its previous authorization, although
    the money so loaned be applied to payment of its debts and liabilities,
    unless the town subsequently ratifies the act.

2.  The question of ratification is not irrevocably disposed of by one or more
    refusals of the town to ratify, upon the question being presented. The
    town may yet ratify at a subsequent meeting duly called and held, and
    such ratification will be binding.

3.  The town itself, however, cannot authorize nor lawfully ratify a borrow-
    ing of money for any purpose not within its municipal duties and pur-
    poses, and the burden of proof is upon a plaintiff relying upon such
    authorization or ratification, to show affirmatively that the money was in
    fact borrowed for a valid municipal purpose.

4.  Evidence that the money was borrowed to pay a town order, which order
    was the last of a large series of renewals of orders extending back some
    thirty years, which successive orders had during that time often been
    reported to the town as outstanding and valid, and had never been
    objected to or questioned by the town,—is sufficient to sustain the plain-
    tiff's burden of proving that the original debt was incurred for a valid
    purpose and hence that the borrowing to pay the last order was for a valid
    purpose.

On report.   Judgment for plaintiff.

Assumpsit for money lent by the plaintiff to the town of Greenfield
upon a town order.   There were special counts upon the order, also
counts for money lent and advanced, money due upon account stated
and for money had and received.   Plea, the general issue.

The facts appear in the opinion.

*L. C. Stearns* and *G. T. Sewall,* for plaintiff.

*P. H. Gillin* and *T. B. Towle,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, FOG-LER, JJ.

FOGLER, J.  This is an action of assumpsit to recover for money loaned by the plaintiff to the defendant town upon a town order. The declaration contains special counts upon such order, and also counts for money lent and advanced, for money due upon an account stated, and for money had and received.  Plea, the general issue.

The case comes to this court upon report.

The order declared upon, introduced by the plaintiff, is of the following tenor:

$440.                              Greenfield, March 25, 1893.

To James Doyle, Town Treasurer, or his successor:— Pay to R. F. Pierce four hundred and forty dollars it being for balance of town order No. 52 for the year 1893.  M. C. White, Jere Avery, Select-men of Greenfield.

No. 67.

Indorsed:  Accepted James Doyle Tr. Rec'd on the within one years interest (26.40) to March 25, 1894.  Rec'd on the within 2 years int. 52.80 to March 25, 1896.

It appears by the report that in March, 1893, Mr. Arthur B. Godfrey was the holder of two town orders, numbers 69 and 70 respectively, drawn by the selectmen of Greenfield and payable to Mr. Godfrey, the amount of which aggregated $694.35.  These orders were written on the same paper never having been separated, and on that account are referred to in the report as the "double orders."  Both orders bore date of Oct. 20, 1886.  Order number 69 was for $300, and stated upon its face "being for part of old order taken up, No. 67, given in the year 1880."

Order numbered 70 was for $394.35 and stated upon its face "it being for part of old order taken up No. 67 given for the year 1880."

March 24, 1893, Mr. Godfrey presented the orders above named to the town officers for payment.  There was no money in the town treasury from which payment could be made.  There was, however, in the hands of the tax collector of the town the sum of $94 which

was paid to Mr. Godfrey and indorsed on order number 70. Mr. White, chairman of the board of selectmen, then paid to Mr. Godfrey of his own money $600.75, the balance due on the "double" orders, and received the orders from Mr. White.

Mr. White testifies that he bought the orders of Mr. Godfrey and the $600.35 was in payment thereof, while his counsel contends that the fact and circumstances show rather that the money was paid by Mr. White as an advancement to the town. We do not think, for reasons to be hereafter given, that it is material which of the positions is correct.

After the payment to Mr. Godfrey of the amount of his orders, the selectmen requested a loan of $600.75 from the plaintiff with which to pay the amount paid by Mr. White, and an order for that amount payable to the plaintiff was drawn and signed by the selectmen, but before its delivery to the plaintiff the town paid Mr. White $160.35, leaving a balance of $440, and the order drawn in favor of the plaintiff was cancelled. The selectmen thereupon drew and signed the order in suit which was delivered to the plaintiff, who paid into the hands of Mr. White the sum of $440. This sum was not paid into the town treasury, but was retained by Mr. White in payment of the balance due him on the amount paid to him by Mr. Godfrey.

At the annual town meeting of the legal voters of the town of Greenfield duly called, held on the 29th day of March, 1897, under an article in the warrant "to see if the town will ratify the following orders: Order No. 67, dated March 20, A. D. 1893, payable to Rufus F. Pierce for four hundred and fifty dollars," the town voted not to pay R. F. Pierce's order.

Again at a special town meeting of the legal voters of Greenfield, duly called and notified, under an article in the warrant to see if the town will ratify certain orders drawn by the selectmen of the town upon the treasurer thereof as follows: "An order dated November 25, A. D. 1893, for four hundred and fifty dollars payable to R. F. Pierce numbered 67," it was voted not to pay R. F. Pierce's order numbered 67.

At a special meeting of the voters of the town, duly called and

notified, held on the 6th day of December, 1897, under an article in the warrant, "To see if said town will ratify certain orders drawn by the selectmen of said town upon the treasurer thereof, as follows : An order dated March 25, A. D. 1893 for four hundred and fifty dollars payable to R. F. Pierce numbered 67," it was voted to pay R. F. Pierce order.

It is the law of this State, settled by a line of decisions, summarized in *Lovejoy* v. *Foxcroft*, 91 Maine, 367, that an action will not lie against a town for money loaned to its officers upon the supposed credit of the town, but without the authority of the town, although the money so loaned be applied to the debts and liabilities of the town, unless the town make the act valid by its subsequent ratification. *Parsons* v. *Monmouth*, 70 Maine, 262 ; *Lincoln* v. *Stockton*, 75 Maine, 141 ; *Otis* v. *Stockton*, 76 Maine, 506 ; *Brown* v. *Winterport*, 79 Maine, 305 ; *Hurd* v. *St. Albans*, 81 Maine, 343 ; *Lovejoy* v. *Foxcroft*, supra.

To maintain an action for money borrowed by the officers of a town without authority, the plaintiff must prove affirmatively three propositions.  1st. That the money was in fact loaned to the town officers upon the credit of the town as for the town.  2nd. That the money so obtained was either paid into the town treasury or was applied in fact to the discharge of lawful liabilities of the town to that extent.  3rd. That the town has ratified the action of the town officers in so borrowing and applying the money.  *Brown* v. *Winterport*, supra.

In the case at bar it is not denied that the plaintiff loaned his money to the selectmen of the town of Greenfield on the supposed credit of the town.  It is not contended that the selectmen were authorized by the town to borrow the money.

Assuming that the money so borrowed was applied to the payment and extinguishment of a liability of the town, has the town ratified by its corporate vote the action of the selectmen in borrowing and applying the money?  The town at a special meeting under a proper article voted to pay the order.  We think this vote was an effectual ratification of the acts of the selectmen in borrowing and applying the money, provided the money was applied for a purpose within the

scope of the corporate powers of the town.  *Brown* v. *Winterport,* supra.

Nor do we think, as contended by the counsel for the defendants, that the former votes, "not to pay," preclude the town from a subsequent ratification (at least until the former votes shall have been rescinded).  It is true, that when a town has once ratified the unauthorized acts of its selectmen it cannot subsequently rescind such vote.  The reason is that the ratification relates back to the transaction.  The vote of ratification at once applies to the act and adopts it as the act of the town.  The act is as binding on the town, as if the vote were prior in time to the act.  A ratification after the act is as potent as authority before the act.  *Brown* v. *Winterport,* supra.

These reasons do not exist when the town votes "not to pay."  In the case at bar, before such votes, the plaintiff had no legal claim against the town ; the town was under no legal obligation to the plaintiff.  Those votes did not affect the parties in the least.  The positions were not changed by the votes, but each is left in statu quo.  Notwithstanding those votes we think the voters of the town, upon reflection, or upon further information, retained the powers to ratify the acts of the selectmen.

The question now arises whether the selectmen applied the money borrowed of the plaintiff to the payment of lawful debts or liabilities of the town.

When the selectman White received the money, he turned the "double order," the Godfrey order, over to the town treasurer as paid, and it was cancelled.  From this it is apparent that the money was in fact applied to the payment of the balance of that order, and effected its surrender, cancellation and extinguishment.  That the money was paid directly to the holder of the order instead of being first paid to the town treasurer, and then by him to the holder of the order, is immaterial, since the effect was the same.  The question therefore is practically this, was the "double order," or Godfrey order, thus paid with the plaintiff's money or the claim it represented, a valid claim against the town ?

From the evidence we gather that the "double order," or Godfrey order, was the remnant residuum of a long succession of orders some

of which were issued as far back as 1859. There seems to have been a series of town orders issued at various times, in and after 1859, to one Blake and to different persons of the Godfrey family. These at different times had been partially paid, but mainly taken up by new orders. At various times, also, various Blake and Godfrey orders were consolidated by being taken up and one new order issued for them. It seems to have been the purpose of the town to take up the Blake orders and to convert its indebtedness on these orders into the Godfrey orders, and to reduce the number of these orders into larger orders less in number.

The town records in this case do not, except in a few instances, disclose for what municipal purposes the original orders were issued. In a few instances it is recited on the order book in 1863, that the order was given on account of relief to families of volunteer soldiers. It appears, however, that at the special town meeting of Sept. 1876, called "to see if the town will authorize the selectmen to hire money to pay on outstanding debts," it was voted "to instruct the selectmen to hire money to pay the Blake and Godfrey orders, so-called, and to have the town to pay the interest on said money annually." It further appears that at various town meetings, after 1876 down to 1882 inclusive, the selectmen reported the Godfrey orders by name as part of the indebtedness of the town. These reports were usually formally accepted by the town and do not appear to have ever been questioned. After 1882, the gross amount of the town's indebtedness is reported, reference being made to former reports. The amounts thus reported necessarily included the Godfrey orders to account for the amount. At these various meetings votes were passed to raise various small sums of money to pay on town debts.

In the absence of opposing evidence we think these repeated recognitions of these orders by the town officers and the town meetings, as representing a valid indebtedness, justify the court in finding that they did in fact represent such indebtedness. *Brown* v. *Winterport*, 79 Maine, 305; *Lovejoy* v. *Foxcroft*, 91 Maine, 367. It is true, there is little or no record evidence of the purpose for which the first orders in the series were issued. There is something, however, in the legal maxim "omnia rite acta presumuntur." There is some

presumption that the town officers and inhabitants of that day knew the facts, and would not have issued and approved the orders for an illegal purpose. There is also some presumption that the immediately succeeding town officers and inhabitants would not have renewed the orders without inquiry into their origin. There is some presumption that had their origin been illegal some officer or inhabitant at the time of their issuance or their renewals, would have challenged them. These presumptions have some weight as evidence, and sufficient weight to sustain the plaintiff's burden of proof in the absence of all evidence to the contrary.

It is claimed by the town that the various renewals of the successive orders by the selectmen were never authorized by the town, and hence the orders in renewal were invalid. This defense could perhaps have been effectually interposed to actions upon those orders, but the original indebtedness would have remained. The town could have ratified the previously unauthorized renewals and even if it has never done so formerly by express vote, it has now expressly ratified the issuance of this final order which closed the series. This ratification is sufficient to now bind the town to pay it, whatever the irregularities or omissions in the issuance of the prior orders, it being found by the court from the evidence that the first orders were issued for valid municipal purposes.

*Judgment for the plaintiff for $440 and interest from March 25, 1896.*